FILED
SUPERIOR COURT
OF GUAM

2022 APR 14 AM 10: 09

CLERK OF COURT

BY:_____

# IN THE SUPERIOR COURT OF GUAM

| | |
|---|---|
| MASAE MUTUK AKA MASAE MAILOS AND JACKSON MAILOS,<br><br>Plaintiffs,<br><br>vs.<br><br>GUAM MEMORIAL HOSPITAL AUTHORITY, an autonomous agency of the GOVERNMENT OF GUAM and DOES 1-10,<br><br>Defendants. | CIVIL CASE NO. CV1030-19<br><br>**DECISION AND ORDER** |

## INTRODUCTION

This matter came before the Honorable Vernon P. Perez on January 13, 2022, for hearing on Defendant Guam Memorial Hospital Authority's ("GMHA") Motion for Summary Judgment. Present remotely via Zoom were Attorney Vincent Leon Guerrero on behalf of Plaintiffs Masae Mutuk aka Masae Mailos and Jackson Mailos (collectively, "Plaintiffs") and Deputy Attorney General James L. Canto II and Assistant Attorney General Yusuke Haffeman-Udagawa on behalf of GMHA. Having reviewed the pleadings, the arguments presented, and the record, the Court now issues the following Decision and Order.

## BACKGROUND

Plaintiffs filed a Complaint on August 27, 2019, alleging GMHA was negligent in treating Ms. Masae Mutuk aka Masae Mailos ("Ms. Mutuk") "professionally and competently

*Mailos vs. GMHA*
Case No. CV1030-19
Decision and Order

Page 1 of 9

with the requisite standard of care required by any medical provider." (Compl. ¶ 19). On December 9, 2008, Ms. Mutuk had an operation performed at GMHA whereby a double-j stent was placed in or around Ms. Mutuk's bladder. *Id.* ¶ 7. Ms. Mutuk was subsequently treated numerous times at GMH after complaining of pain in her abdominal area and bleeding in her vaginal region. *Id.* ¶ 8. On January 28, 2018, Ms. Mutuk was treated at GMHA for a urinary tract infection, after presenting herself at GMHA complaining of pain to her abdomen. *Id.* ¶ 9. On March 6, 2018, Ms. Mutuk presented herself at GMHA complaining of vaginal bleeding and was treated for a urinary tract infection. *Id.* at ¶ 10. Six days later, on March 12, 2018, Ms. Mutuk presented herself at GMHA and complained of abdominal pain. *Id.* at ¶ 11. She was treated and discharged. *Id.* On March 24, 2018, Ms. Mutuk again presented herself at GMHA complaining of vaginal bleeding, was treated, and discharged. *Id.* at ¶ 12. On March 20, 2018, April 2, 2018, and April 11, 2018, x-rays or ultra sounds were taken at the Guam Radiology Consultants and it was revealed remains of a catheter were left inside her pelvis region. *Id.* at ¶ 13. On April 25, 2018, Ms. Mutuk was admitted to the Guam Regional Medical City to have the catheter removed. *Id.* at ¶ 15. Ms. Mutuk now seeks damages from GMHA based on its actions or omissions which caused her pain and suffering. Specifically, Ms. Mutuk alleges GMHA was negligent because:

> (1) GMH with complete access to Ms. Mutuk's medical records failed to remove the catheter as late as March, 2018; and
>
> (2) GMH failed to properly diagnose that the cause of Ms. Mutuk's complaints were caused by the catheter left by GMH's agents or employees.

*Id.* at ¶ 20.

Bench Trial in this matter was to commence on November 19, 2021. On November 3, 2021, GMHA filed a Motion for Summary Judgment in light of Plaintiffs' intent to proceed to trial without a medical expert. The Court subsequently determined that it would allow the Motion for Summary Judgment to move forward in lieu of trial. (Order Vacating Status Hrg. Set for Nov. 18, 2021 and Setting Matter for Mot. Hrg., Nov. 17, 2021). On December 15,

*Mailos vs. GMHA*
Case No. CV1030-19
Decision and Order

Page 2 of 9

2021, Plaintiffs filed their Opposition and a Declaration in Support of the Opposition,[1] and on December 29, 2021, GMHA filed its Reply.

On January 13, 2022, the Court heard oral arguments from the parties and subsequently placed the matter under advisement.

## DISCUSSION

### I. Summary Judgment Standard

Summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Guam R. Civ. P. Rule 56(c). A genuine issue exists when "there is 'sufficient evidence' which establishes a factual dispute requiring resolution by a fact-finder." *Izuka Corp. v. Kawasho Int'l (Guam) Inc.*, 1997 Guam 10 ¶ 7. The factual dispute must concern a material fact. *Id.* "A 'material' fact is one that is relevant to an element of a claim or defense and whose existence might affect the outcome of the suit . . . [d]isputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *Id.* "[T]he Court must view the evidence and draw inferences in the light most favorable to the non-movant." *Edwards v. Pacific Financial Corp.*, 2007 Guam 27 ¶ 7. "When a motion for summary judgment is made . . . an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Guam R. Civ. P. Rule 56(e). Further,

> the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since a complete

---

[1] The Court notes that the caption of the pleading is entitled "Declaration in Support of Entry of Default." The Court assumes this to be a clerical error as it was filed contemporaneously with Plaintiffs' Opposition and is cited in said Opposition, and will therefore treat it as a declaration in support of their opposition.

*Mailos vs. GMHA*
Case No. CV1030-19
Decision and Order

failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986) (internal quotation marks omitted).

## II. Statute of Limitations

GMHA first moves for summary judgment in its favor because Plaintiffs' claim is time-barred. *See* Mot. Summary Judgment at 5-6, Nov. 3, 2021. Plaintiffs oppose, arguing that the principle of continuous negligent treatment doctrine should apply, and as Ms. Mutuk was last treated at GMH in March 2018, the deadline to file the claim and action had not expired at the time of filing. *See* Opp'n at 3, Dec. 15, 2021.

"Guam has a one-year discovery provision for malpractice actions, and a three-year outer bar from the date of 'treatment, omission or operation.'" *Kennedy v. Sule*, 2015 Guam 38 ¶ 24. "The short time limit on malpractice actions encourages the plaintiff to act and provides the defendant notice and an opportunity to prepare a defense before evidence becomes stale." *Id.* (citing *Lamont v. Wolfe*, 190 Cal. Rptr. 874, 877 (Ct. App. 1983)). Title 7 G.C.A. § 11308 "provides 'a clear directive' that medical malpractice suits must be filed 'within one year from the date that an injury is discovered or, at the outside, three years from the date of treatment." *Id.* at ¶ 28 (quoting *Custodio v. Boonprakong*, 1999 Guam 5 ¶ 27).

"Under the discovery rule, a party is deemed aware of an injury not only when he has actual knowledge but when he could have reasonably discovered both the injury and the negligent cause through the exercise of reasonable diligence." *Id.* at ¶ 28 (internal quotation marks omitted).

> The discovery period begins running when the injured party has suffered appreciable harm and knows or suspects that professional blundering is its cause. Suspicion of wrongdoing starts the clock because ignorance of legally significant facts does not toll the statute of limitations. Consequently, if a suspicion exists, the plaintiff cannot sit back and wait for the facts to find him as the burden of finding the facts falls upon his shoulders.

*Id.* at ¶ 29 (internal citations, quotation marks, and alterations omitted). Here, Plaintiffs' lawsuit was filed on August 27, 2019. The Complaint sets forth that a double-j stent was placed in or around her bladder on December 9, 2008. (Compl. ¶ 7). GMHA argues that "[s]ince Plaintiffs

*Mailos vs. GMHA*
Case No. CV1030-19
Decision and Order

Page 4 of 9

are proceeding based upon a res ipsa loquitur theory of a medical instrument left in [Ms. Mutuk's] body, December 2008 must be the date from which the statute begins to run" and therefore "the action was time-barred as of December 2011." (Mot. Summary Judgment at 5). Plaintiffs do not appear to dispute this timeline, but argues that the continuous negligent treatment exception should apply. (Opp'n at 3). Therefore, the Court must determine whether the doctrine of continuous negligent treatment is applicable in this matter.

"The continued course of treatment exception is a limited one. Several courts have held that the statute begins to run at the time the patient knew or should have known of his injury, even if this occurs prior to the severance of the doctor-patient relationship." *Sule*, 2015 Guam 38 ¶ 46 (citing *Ballenger v. Crowell*, 247 S.E.2d 287, 294) (N.C. Ct. App. 1978)). "The purpose of this doctrine is to aid victims of medical malpractice who are unable to pinpoint the exact date of their injury due to the continuing nature of their medical treatment." *Id.* (citing *Forshey v. Jackson*, 671 S.E.2d 748, 756 (W. Va. 2008)).

The December 9, 2008 operation was conducted by Dr. Jaroslav Richter at GMH. (Decl. Ex. 1 (Discharge Summary & Operative Report), Dec. 15, 2021). Ms. Mutuk was seen by Dr. Richer after Dr. Florencio Lizama diagnosed her with hydronephorosis. (Decl. Ex. 1 (Discharge Summary)). Dr. Lizama's Discharge Summary concludes with a note that Ms. Mutuk is "to follow up with Dr. Richter in Public Health." *Id.* Although Plaintiffs set forth in the Complaint that "Ms. Mutuk was subsequently treated numerous times at GMH after complaining of pain in her abdominal area and bleeding in her vaginal region," *see* Compl. ¶ 8, no specific facts have been set forth indicating a mutual agreement or expectation for future treatment between Ms. Mutuk and Dr. Lizama or Dr. Richter beyond any initial follow up set forth in the discharge summary. *See, e.g., Sule*, 2015 Guam 38 ¶ 54 (noting that in *Peters v. Asarian*, 936 N.Y.S.2d 206, 208 (App. Div. 2011) "a single visit to plaintiff's plastic surgeon nearly 19 months after her treatment was insufficient to establish a continuous course of treatment to overcome a statute of limitations because there was no mutual agreement or expectation for a future consultation" and in *Adams v. Kohan*, 963 N.Y.S.2d 342, 343 (App. Div. 2013) that "two phone calls between plaintiff and defendant physician did not demonstrate

*Mailos vs. GMHA*
Case No. CV1030-19
Decision and Order

Page 5 of 9

that plaintiff was undergoing an actual course of treatment, or that plaintiff and defendant physician contemplated future treatment."). The Complaint next sets forth that on January 28, 2018, almost ten years later "Ms. Mutuk presented herself at GMH complaining of pain to her abdomen. She was treated for a urinary tract infection." (Compl. ¶ 9). Further, the next GMH medical record included for the Court's review is a Radiology Report indicating the results of an abdominal ultrasound occurring on March 12, 2015 ordered by Dr. Johnny Kim. (Decl. Ex. 2, Dec. 15, 2021). As GMHA sets forth in its Reply, "[t]his long gap in treatment, as well as the discontinuity in the actual physicians, suggests the complete lack of continuity of treatment." (Reply at 4, Dec. 29, 2021). Although Plaintiffs seek the Court to follow *Hyusman v. Kirsch*, 57 P.2d 908 (Cal. 1936), the Court declines to do so, noting that California's medical malpractice statute, unlike Guam's, specifically enumerates three circumstances that can toll the three-year repose provision.[2] *See Sule*, 2015 Guam 38 ¶ 52. The Court is inclined to agree with GMH and finds that the doctrine of continuous negligent treatment is not applicable in this matter and Plaintiffs' claims as to negligence based upon GMH's failing to remove a stent placed in 2008 is therefore time-barred.

### III.    Medical Expert Testimony

GMHA also moves the Court to grant summary judgment in its favor because Plaintiffs cannot establish that GMHA negligently misdiagnosed the cause of Ms. Mutuk's pain and failed to remove a medical device without an expert witness. (Mot. Summary Judgment at 6-12). In Opposition, Plaintiffs argue that they have identified her treating physician as a witness who may testify as to what she did and why she did what she did, and because the facts of this case speak for themselves. (Opp'n at 3-4).

In a cause of action for negligence, Plaintiffs must prove the following elements to prevail: "a) that the tortfeasor had a duty to act in a manner that does not place others in an unreasonable risk of harm; b) that duty was breached; c) as a result of that breach it is the cause;

---

[2] In California, the three-year repose provision can be tolled only in three circumstances: (1) upon proof of fraud; (2) upon proof of intentional concealment; and (3) if the treatment results in the presence of a foreign body that provides no therapeutic or diagnostic purpose or effect. *See* Cal. Civ. Proc. Code § 340.5.

*Mailos vs. GMHA*
Case No. CV1030-19
Decision and Order

Page 6 of 9

d) of harm or damages suffered by a party." *Guerrero v. DLB Const. Co.*, 1999 Guam 9 ¶ 14 (citing Restatement (Second) Torts §§ 281 and 282 (1988)). Generally, medical malpractice cases alleging negligence require Plaintiff to show a professional standard of care was breached, and as a result of that breach, the party was injured. "[A] physician is required to possess and exercise, in both diagnosis and treatment, that reasonable degree of knowledge and skill which is ordinarily possessed and exercised by other members of his profession in similar circumstances." *Landeros v. Flood*, 551 P.2d 389, 392-93 (Cal. 1976). "The standard of care against which the acts of a physician are to be measured is a matter peculiarly within the knowledge of experts; it presents the basic issue in a malpractice action and can only be proved by their testimony, unless the conduct required by the particular circumstances is within the common knowledge of the layman." *Id.* at 394 (citations omitted). "[Q]ualified medical experts may, with a proper foundation, testify on matters involving causation when the causal issue is sufficiently beyond the realm of common experience that the expert's opinion will assist the trier of fact to assess the issue of causation." *Jennings v. Palomar Pomerado Health Systems, Inc.*, 8 Cal.Rptr.3d 363, 368 (Cal. Ct. App. 2003). "In a medical malpractice action, a plaintiff must prove the defendant's negligence was a cause-in-fact injury." *Id.* at 369.

To overcome GMHA's Motion for Summary Judgment, Plaintiffs must establish that sufficient facts exist to support a prima facie case of negligence, as otherwise "there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 323. To prove negligence, Plaintiffs must show that (1) GMHA staff failed to exercise a degree of care, skill, and learning expected of a reasonably prudent health care provider at that time in the profession or class to which he or she belongs, acting in the same or similar circumstances; and (2) GMHA staff's failure to exercise this degree of care was the cause of Ms. Mutuk's pain and suffering.

Here, it is not clear whether it is expected that a doctor should check to see whether a double-J stent placed in a patient ten years prior is still present. Further, an expert is required to testify as to when the retrieval of the stent becomes medically necessary, as well as what is the

*Mailos vs. GMHA*
Case No. CV1030-19
Decision and Order

Page 7 of 9

medical protocol for patient care in its removal, as the double-j stent was intentionally placed and left in Ms. Mutuk after the operating procedure in 2008. *See* Decl. Ex. 1 (Discharge Summary indicating the "patient was ambulatory with no problems and no complaints and after her stent placement was felt appropriate for discharge and is discharged to home on 12/10/2008" and Operative Report indicating the operation performed was the "placement of double-J stent on the right, fluoroscopy and cystoscopy.").

The Court also does not find that Plaintiffs can rely on the doctrine of *res ipsa loquitur* without any expert testimony. "*Res ipsa loquitur* literally means 'the thing speaks for itself.'" *Rahmani v. Park*, 2011 Guam 7 ¶ 37 (quoting Restatement (Second) of Torts § 328D, cmt. a (1965)). Under the doctrine of *res ipsa loquituri*, "it may be inferred that harm suffered by the plaintiff is caused by negligence of the defendant when (1) the event is of a kind which ordinarily does not occur in the absence of negligence; (b) other responsible causes, including the conduct of the plaintiff and third persons, are sufficiently eliminated by the evidence; and (c) the indicated negligence is within the scope of the defendant's duty to the plaintiff." *Id.* (citing Restatement (Second) of Torts § 328D(1)). "The concept of res ipsa loquitur deals with circumstantial evidence and the presence of probabilities." *Elcome v. Chin*, 1 Cal.Rptr. 3d 631, 640 (Cal. Ct. App. 2003). The "use of the res ipsa loquitur doctrine is especially suited to a medical or dental malpractice setting in which the unwitting and often unconscious or semiconscious patient is at an evidentiary disadvantage because of his or her inability to demonstrate what occurred in the hospital or surgical room setting." *Id.* (citation omitted).

Without expert testimony, Plaintiffs cannot meet the elements of *res ipsa loquitur*. *See Park*, 2011 Guam 7 ¶ 37. Although Plaintiffs allege GMHA staff was negligent in not removing the double-j stent and in not properly diagnosing Ms. Mutuk's symptoms, the potential for other responsible causes, including the conduct of Ms. Mutuk and/or other third persons has not been eliminated. As noted earlier, the discharge summary indicates that Ms. Mutuk was to follow up with Dr. Lizama at public health, however, no additional facts have been set forth in either medical records or a declaration indicating whether this actually

*Mailos vs. GMHA*
Case No. CV1030-19
Decision and Order

Page 8 of 9

happened. Accordingly, as Plaintiffs cannot establish the negligence claim at trial without expert testimony, the Court GRANTS GMHA's Motion for Summary Judgment.

**CONCLUSION**

For the foregoing reasons, the Court hereby GRANTS GMHA's Motion for Summary Judgment.

**IT IS SO ORDERED** this 14th day of April, 2022.

HONORABLE VERNON P. PEREZ
Judge, Superior Court of Guam

**SERVICE VIA E-MAIL**
I acknowledge that an electronic copy of the original was e-mailed to:
Vince Leon Guerrero,
AG - Civil

Date: 4·14·22 Time: 10:16am

Deputy Clerk, Superior Court of Guam

*Mailos vs. GMHA*
Case No. CV1030-19
Decision and Order